UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-01758

| | |
|---|---|
| FRED NEKOUEE, individually, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| SNARF'S MANAGEMENT LLC, a Colorado | : |
| limited liability company; | : |
| | : |
| M&J RESTAURANTS LLC, a Colorado | : |
| limited liability company; and | : |
| | : |
| STEPHEN D. TEBO, individually, d/b/a/ TEBO | : |
| PROPERTIES; | : |
| | : |
| Defendants. | : |
| _____ | : |
| | / |

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other

mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues

the Defendants, SNARF'S MANAGEMENT LLC, a Colorado limited liability company; M&J

RESTAURANTS LLC, a Colorado limited liability company; and STEPHEN D. TEBO d/b/a

TEBO PROPERTIES; (sometimes referred to as "Defendants"); for injunctive relief, and

attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42

U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County

of Hillsborough.

2.     Defendant STEPHEN D. TEBO d/b/a/ Tebo Properties, with an office at 3111 28th Street, Boulder, Colorado 80301, owns the property at and near 603-645 Ken Pratt Boulevard, Longmont, Colorado 80501, in Boulder County ("Property").

3.     Defendant M&J RESTAURANTS LLC's restaurant, Goodfella's, is located at the Property ("Goodfella's").

4.     Defendant SNARF'S MANAGEMENT LLC's restaurant, Snarf's, is located at the Property ("Snarf's").

5.     Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the property.   The Defendants' Property and restaurants are located in and do business within this judicial district.

6.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

7.     Defendants each own, lease, lease to, or operate a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(7)(B) and (E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

8.     The Property is a place of public accommodation.

9.     Goodfella's is a place of public accommodation.

10.    Snarf's is a place of public accommodation.

11.    Defendants are responsible for complying with the obligations of the ADA.

12.    Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

13.     Mr. Nekouee travels to the Longmont-Firestone area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

14.     Fred Nekouee has visited the Property which forms the basis of this lawsuit on August 3, 2018; September 30, 2018; and on May 8, 2019; and he bought food and sought to avail himself of the goods and services at Property on such dates.

15.     Fred Nekouee visited and bought food at Goodfella's on August 1, 2018 and September 30, 2018.

16.     Fred Nekouee visited and bought food at Snarf's on August 1, 2018 and May 8, 2019.

17.      Fred Nekouee attended a heavy equipment auction in the Longmont area on October 3, 2018 and again on May 8, 2019.

18.     Fred Nekouee visited Rocky Mountain National Park on October 2, 2018.

19.     Fred Nekouee once again visited the Longmont, Colorado area from February 3-7, 2019.

20.     Fred Nekouee plans to return to the property to avail himself of the goods and services offered to the public at Property.

21.     The Plaintiff has definite plans to return to the area and to Property, and to Goodfella's and Snarf's in late September or early October 2019.

22.     The Property, Goodfella's and Snarf's are close to the hotels he stays at in the area and are close to the heavy equipment auction and dealerships he visits.

23.     The Plaintiff likes the food at Goodfella's and Snarf's at the Property.

24.     The Plaintiff plans to return Goodfella's and Snarf's to eat.

25.     For the reasons set forth in paragraphs 13-24 and 38, Fred Nekouee plans to return to Property, and its restaurants.

26.     The Plaintiff has encountered architectural barriers at the subject property.

27.     The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the property, and have impaired his use of the restrooms there.

28.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

29.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

30.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

31.     On his visit to Property, the Plaintiff encountered excessively steep slopes in its parking lot.

32.     The cross slope of the walking surface in front of Goodfella's is steeper than 1:20 (5%).

33.     The slope of the surface within 60 inches of the entrance door to Snarf's is steeper than 1:48 (2%).

34.     The Plaintiff encountered and observed barriers to access in the men's restroom in Snarf's; and so, he also tried to use the women's restroom in Snarf's, in which women's restroom he also encountered and observed barriers to access.

35.    The Plaintiff encountered and observed barriers to access in the men's restroom in Goodfella's; and so, he also tried using the women's restroom in Goodfella's, in which women's restroom he also encountered and observed barriers to access.

36.    The Plaintiff is deterred from visiting the Property even though he enjoys its goods, because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

37.    Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 43 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

38.    Fred Nekouee desires to visit the Property not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

39.    The Defendants have discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

40.    The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

41.    The physical conditions exist at the Property that are set forth in each romanette

"(i)" in each lettered subparagraph of paragraph 45 below.

42.     Preliminary inspections of Property, Snarf's, and Goodfella's at the Property show that violations of the ADA exist as set forth in paragraph 43 below.

43.     The violations of the ADA that Fred Nekouee personally encountered or observed include, but are not limited to:

**PARKING**

a.   (i) In the parking lot, one of the two spaces marked to disabled patrons in front of and between Baba Pipe and Tobacco and La Panda Mexican does not have a sign with the international symbol of accessibility.   (ii) One of these two spaces does not have a sign with the international symbol of accessibility, in violation of Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1.   (iii) The Plaintiff observed this lack of signage, and it deters him from visiting Southmoor Plaza as it makes it difficult for him to find an accessible parking space.   (iv) The action required to install a sign with the international symbol of accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

b.   (i) In the parking lot, there are no parking spaces with van accessible signage in front of Snarf's and Rosario's Peruvian Restaurant.   (ii) This lack of van accessible signage is in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   (iii) The Plaintiff observed this lack van accessible signage, and it deters him from visiting Snarf's and Southmoor Plaza.   (iv) The action required to install a van accessible sign is easily accomplishable and able to be carried out without much difficulty or expense.

c.   (i) In the parking lot, there is no access aisle for the parking spaces marked for disabled patrons in front of Snarf's.   (ii) There is no access aisle for the parking spaces for

disabled patrons in front of Snarf's, in violation of Federal Law 2010, ADAAG §§ 502.1 and 502.3.3.   (iii) The Plaintiff encountered this lack of an access aisle while unloading from and loading back into his vehicle, and it made it difficult for him to do so and to move in his wheelchair to and from Snarf's.   (iv) The action required to stripe this section of the parking lot to provide for an access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

   d.   (i) The access aisle marked in front of Goodfella's shown in the photograph below is less than 60 inches wide.   (ii) The access aisle serving the accessible parking space in front of Goodfella's is about 43 inches wide and less than the minimum required width of 60 inches, in violation of Federal Law 2010, ADAAG § 502.3.1.   (iii) The Plaintiff encountered this narrow access aisle and due to its narrow width, it made it difficult for him to move in his wheelchair from his vehicle to Goodfella's and back again.   (iv) The action required to restripe this section of the parking lot to include an access aisle that is at least 60 inches wide is easily accomplishable and able to be carried out without much difficulty or expense.



e.   (i) The access aisle serving the car and van spaces marked for disabled patrons in front of Goodfella's shown in the photograph below does not extend the full length of these parking spaces and is less than 60 inches wide. (ii) This access aisle does not extend the full length of the accessible parking spaces it serves and is not a minimum of 60 inches wide, in violation of Federal Law 2010, ADAAG §§ 502.3.1 and 502.3.2.   (iii) The Plaintiff used this access aisle while moving in his wheelchair, and its lack of length and width made it difficult for the Plaintiff to use this access aisle.   (iv) The action required to restripe this section of the parking lot to provide an access aisle that is of proper length and width is easily accomplishable and able to be carried out without much difficulty or expense.



f.    (i) In the parking lot, the front section (closer to the building) of the parking space marked for disabled use in front of Goodfella's shown in the photograph below, has a running slope steeper than 1:48 (2%).   (ii) The front section (closer to the building) of this parking space for disabled patrons in front of Goodfella's is not even and has a running slope as steep as about 1:14.5 (6.9%) and steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered this running slope in this parking space, and it made his wheelchair unstable.   (iv) The action required to reduce the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



g.    (i) In the parking lot, the parking space marked for disabled patrons in front of Goodfella's shown in the photograph below has a running slope in its middle section that is steeper than 1:48 (2%).   (ii) This parking space has a running slope as steep as about 1:18.9 (5.3%) and steeper than the maximum allowed running slope of 1:14(2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff observed the slope of this parking space and it deters him from visiting Goodfella's.   (iv) The action required to reduce the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



h.    (i) In the parking lot, the parking space marked for disabled patrons in front of

Rosario's Peruvian Restaurant has a running slope and a cross slope in its middle section

that are steeper than 1:48 (2%).   (ii) This parking space for disabled patrons has a running

slope as steep as about 1:13.9 (7.2%) and a cross slope as steep as 1:13.2 (7.6%) with both

slopes steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law

2010, ADAAG § 502.4.   (iii) The Plaintiff observed the slopes in this parking space, and

they deter him from visiting Rosario's Peruvian Restaurant and Southmoor Plaza.   (iv)

The action required to reduce the slopes of this parking space is easily accomplishable and

able to be carried out without much difficulty or expense.

i.    (i) In the parking lot, the parking space marked for disabled patrons in front of

Snarf's shown in the photograph below has a running slope in its middle and back sections (furthest from the building) sections that are steeper than 1:48 (2%).   (ii) The running slope of the middle section of this parking space has a running slope as steep as about 1:15.9 (6.3%) and the back section (furthest from the building) has a running slope as steep as about 1:9.8 (10.2%) with both slopes steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered these slopes in this parking space, and it made his wheelchair unstable.   (iv) The action required to reduce the slopes of this parking space is easily accomplishable able to be carried out without much difficulty or expense.



j.   (i) In the parking lot, the parking space marked for disabled patrons in front of

Goodfella's shown in the photograph below has a cross slope in its front section (closer to the building) that is steeper than a cross slope of 1:48 (2%).   (ii) The front section of this parking space for disabled patrons has a cross slope steeper than 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered this steep slope in this parking space while moving in his wheelchair, and it made his wheelchair unstable. (iv) The action required to reduce the cross slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



k.   (i)   In the parking lot, the running slope of the marked access aisle nearest the entrance to Goodfella's is steeper than a slope of 1:48 (2%).   (ii) This running slope of this access section of the access aisle is steeper than the maximum allowed slope of 1:48 (2%),

in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this running slope in this access aisle, and it made his wheelchair unstable.   (iv) The action required to reduce the running slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

l.   (i) The curb ramp in front of Goodfella's projects into parking spaces and the parking access aisle.   (ii) This curb ramp projects into parking spaces and the parking access aisle, in violation of Federal Law 2010, ADAAG §§ 406.5 and 502.4.   (iii) While moving in his wheelchair, the Plaintiff used this ramp along the accessible route to Goodfella's and due to the ramp extending into the parking spaces and into the access aisle it is dangerous for the Plaintiff to use this ramp, and it made his wheelchair unstable at the point that the ramp joins the access aisle due to the change in level.   (iv) The action required to provide a ramp that does not project into parking spaces and into the access aisle is easily accomplishable and able to be accomplished without much difficulty or expense.

m.   (i)   The cross slope of the walking surface shown at the level tool in the photograph below is steeper than 1:48 (2%).   (ii) This cross slope of this walking surface along the accessible route to Goodfella's is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The Plaintiff encountered this cross slope while moving in his wheelchair, and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.



n.    (i) The change in level of the walking surface near Goodfella's shown in the photograph above in subparagraph (m) has a change of level near where the blacktop meets the cement that is greater than 0.25 inches.   (ii) This change of level is greater than the maximum allowed change of level of 0.25 inches, in violation of Federal Law 2010, ADAAG § 303.2.   (iii) The Plaintiff had to maneuver his wheelchair around this change of level to avoid stopping the movement of his wheelchair or overturning his wheelchair. (iv) The action required to patch this change of level in the walkway is easily accomplishable and able to be carried out without much difficulty or expense.

o.    (i) The slope of the surface within 60 inches of the entrance door to Goodfella's is steeper than 1:48 (2%).   (ii) The slope of the surface within the required maneuvering

space of 60 inches in front of the entrance door to Goodfella's is as steep as about 1:24.4 (4.1%) and steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 404.2.4.4.   (iii) When he tried to enter Goodfella's, the Plaintiff's wheelchair slipped sideways due to the slope near the entrance.   (iv) The action required to reduce the slope of this required maneuvering space in front of the entrance to Goodfella's is easily accomplishable and able to be carried out without much difficulty or expense.

p.   (i) The slope of the surface within 60 inches of the entrance door to Snarf's is steeper than 1:48 (2%).   (ii) The slope of the surface within the required maneuvering space of 60 inches in front of the entrance door to Snarf's is as steep as about 1:28.6 (3.5%) and steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 404.2.4.4.   (iii) When he tried to enter Snarf's, the Plaintiff's wheelchair slipped sideways due to the slope near the entrance.   (iv) The action required to reduce the slope of this required maneuvering space in front of the entrance to Snarf's is easily accomplishable and able to be carried out without much difficulty or expense.

**SNARF'S ENTRANCE DOOR**

q.   (i) The force needed to the open the entrance door to the Snarf's is more than 5 pounds.   (ii) The force needed to open this door is about 12 pounds and greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. (iii) Due to the force necessary to open this door, the Plaintiff required assistance to open this door and to enter Snarf's.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much

difficulty or expense.

**SNARF'S INTERIOR**

r.    (i) In Snarf's, the cup lids and condiments on top of the ice cream stand are higher than 48 inches above the floor.   (ii) These cup lids and condiments are higher than the maximum height of 48 inches above the finish floor when the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) The Plaintiff tried but could not reach these cup lids or condiments from his wheelchair.   (iv) The action required to relocate these cup lids and condiments is easily accomplishable and able to be carried out without much difficulty or expense.

s.   (i) In Snarf's, the soda water dispenser lever on the beverage machine is higher than 48 inches above the floor.   (ii) This water dispenser lever is higher than 48 inches above the finish floor when the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) The Plaintiff tried but could not reach this soda water dispenser lever from his wheelchair.   (iv) The action required to relocate this beverage machine or the soda water dispenser lever is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN SNARF'S**

t.   (i) In the men's restroom in Snarf's, the toilet does not have the flush control mounted on the open and wide side of the clear floor space.   (ii) This toilet does not have the flush control mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010, ADAAG § 604.6.   (iii) Due to the location of the flush control, once he transferred from the toilet back to his wheelchair, the Plaintiff could not reach this flush control from his wheelchair.   (iv) The action required to relocate this flush control is easily

accomplishable and able to be carried out without much difficulty or expense.

u.   (i) In the men's restroom in Snarf's, the rear wall grab bar does not extend at least 12 inches on one side and 24 inches on the other side from the centerline of the toilet.   (ii) This rear wall grab bar does not extend a minimum of 12 inches on one side and 24 inches on the other side from the centerline of the water closet or toilet, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) The position of this rear wall grab bar made it difficult for the Plaintiff to use it to transfer himself from his wheelchair to the toilet.   (iv) The action required to relocate this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) In the men's restroom in Snarf's, the space between the bottom of the rear wall grab bar and the top of the toilet tank is less than 1.5 inches.   (ii) The space between the rear wall grab bar and the top of the toilet tank is less than a minimum of 1.5 inches, in violation of Federal Law 2010, ADAAG § 609.3.   (iii) Due to this small space between the bottom of the rear wall grab bar and the top of the toilet tank, the Plaintiff had difficulty grasping the rear wall grab bar to help transfer himself from his wheelchair to the toilet. (iv) The action required to replace the toilet tank with a lower profile model or to relocate the rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

w.   (i) In the men's restroom in Snarf's, the toilet paper dispenser outlet is higher than 48 inches above the floor.   (ii) This toilet paper dispenser outlet is about 51 inches above the finish floor and higher than a maximum of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG §§ 604.2 and 604.7.   (iii) The Plaintiff could not reach additional toilet paper from this dispenser after he tore off a piece that was hanging down

due to the height of this dispenser above the floor.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

x.    (i) In the men's restroom in Snarf's, the paper towel dispenser outlet is higher than 48 inches above the floor.   (ii) This paper towel dispenser outlet is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) Due to its height above the floor, the Plaintiff required assistance to obtain a paper towel from this dispenser.   (iv) The action required to relocate this paper towel dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

y.    (i) In the men's restroom in Snarf's, the liquid soap dispenser outlet is higher than 48 inches above the floor.   (ii) This liquid soap dispenser is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to its height above the floor, the Plaintiff could not reach this liquid soap dispenser from his wheelchair.   (iv) The action required to relocate this liquid soap dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

z.    (i) In the men's restroom in Snarf's, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is about 49 inches above the finish floor and higher than 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) Due to the height of this mirror's reflecting surface above the floor, the Plaintiff could not see his full face in this mirror.   (iv) The action required to relocate this mirror is easily accomplishable and

able to be carried out without much difficulty or expense.

**WOMEN'S RESTROOM IN SNARF'S**

aa.    (i) The force needed to open the entrance door to the women's restroom in Snarf's is more than 5 pounds.   (ii) The force needed to open this door is about 7 pounds and greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff had difficulty opening this door and to enter the women's restroom in Snarf's.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

bb.    (i) In the women's restroom in Snarf's, the rear wall grab bar does not extend a minimum of 12 inches on one side and 24 inches on the other side from the centerline of the toilet.   (ii) This rear wall grab bar does not extend a minimum of 12 inches on one side and 24 inches on the other side from the centerline of the water closet or toilet, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) The position of this rear wall grab bar made it difficult for the Plaintiff to use it to transfer himself from his wheelchair to the toilet. (iv) The action required to relocate this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

cc.    (i) In the women's restroom in Snarf's, the space between the bottom of the rear wall grab bar and the top of the toilet tank is less than 1.5 inches.   (ii) The space between the rear wall grab bar and the top of the toilet tank is less than a minimum of 1.5 inches, in violation of Federal Law 2010, ADAAG § 609.3.   (iii) Due to this small space between the bottom of the rear wall grab bar and the top of the toilet tank, the Plaintiff had difficulty

grasping the rear wall grab bar to help transfer himself from his wheelchair to the toilet.

(iv) The action required to replace the toilet tank with a lower profile model or to relocate

the rear wall grab bar is easily accomplishable and able to be carried out without much

difficulty or expense.

dd.   (i) In the women's restroom in Snarf's, the drain and supply pipes under the sink

are not insulated.   (ii) As shown in the photograph below, the drain and supply pipes under

the sink in the women's restroom in Snarf's are not insulated, in violation of Federal Law

2010, ADAAG § 606.5.   (iii) The Plaintiff used this sink, and due to the lack of insulation

on the drain and supply pipes under it, he risked skin burns and injury to his legs.   (iv) The

action required to insulate the pipes under this sink is easily accomplishable and able to be

carried out without much difficulty or expense.



ee.   (i) In the women's restroom in Snarf's, the toilet paper dispenser outlet is higher

than 48 inches above the floor.   (ii) This toilet paper dispenser outlet is about 51 inches above the finish floor and higher than a maximum of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG §§ 604.2 and 604.7.   (iii) The Plaintiff could not reach toilet paper from this dispenser due to the height of this dispenser above the floor. (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

ff.   (i) In the women's restroom in Snarf's, the paper towel dispenser outlet is higher than 48 inches above the floor.   (ii) This paper towel dispenser outlet is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) Due to its height above the floor, the Plaintiff required assistance to obtain a paper towel from this dispenser.   (iv) The action required to relocate this paper towel dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

gg.   (i) In the women's restroom in Snarf's, the liquid soap dispenser outlet is higher than 48 inches above the floor.   (ii) This liquid soap dispenser is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to its height above the floor the Plaintiff could not reach this liquid soap dispenser from his wheelchair.   (iv) The action required to relocate this liquid soap dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

hh.   (i) In the women's restroom in Snarf's, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is about 49 inches above the finish floor and higher than 40 inches above

the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) Due to the height

of this mirror's reflecting surface above the floor, the Plaintiff could not see his full face in

this mirror while sitting in his wheelchair.   (iv) The action required to relocate this mirror

is easily accomplishable and able to be carried out without much difficulty or expense.

**ENTRANCE DOOR TO GOODFELLA'S**

    ii.   (i) The elapsed time for the entrance door to Goodfella's to close from an open

position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The time

required to move this door from an open position of 90 degrees to a position of 12 degrees

from the latch is less than 5 seconds, in violation of Federal Law 2010, ADAAG §

404.2.8.1.   (iii) The Plaintiff used this door, and due to its short closing time, his

wheelchair got hit by the closing door, and he required assistance to enter Goodfella's.

(iv) The action required to adjust the door closer is easily accomplishable and able to be

carried out without much difficulty or expense.

**MEN'S RESTROOM IN GOODFELLA'S**

    jj.   (i) The Goodfella's men's restroom door pull side maneuvering clearance in a

front approach beyond the latch and parallel to the doorway is less than 18 inches.   (ii)

This restroom door pull side maneuvering clearance in a font approach beyond the latch

and parallel to the doorway is less than 18 inches, in violation of Federal Law 2010,

ADAAG § 404.2.4.   (iii) Due to this door pull side maneuvering clearance, in his

wheelchair, the Plaintiff had difficulty entering this door.   (iv) The action required to

increase this door pull side maneuvering clearance is easily accomplishable and able to be

carried out without much difficulty or expense.

    kk.   (i) In the men's restroom in Goodfella's, the accessible toilet compartment door

pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than 18 inches.   (ii) This accessible toilet compartment door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than 18 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to the amount of this pull side maneuvering clearance, in his wheelchair, the Plaintiff had great difficulty exiting this toilet compartment.   (iv) The action required to increase this door pull side maneuvering clearance is easily accomplishable and able to be carried out without much difficulty or expense.

ll.      (i) In the men's restroom in Goodfella's, a door pull is not provided on both sides of the accessible toilet compartment door.   (ii) A door pull is not provided on both sides of this accessible toilet compartment door, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull on the inside of this door, the Plaintiff could not fully close this accessible toilet compartment door.   (iv) The action required to install a door pull on the inside of this compartment's door is easily accomplishable and able to be carried out without much difficulty or expense.

mm.      (i) In the men's restroom in Goodfella's, the rear wall grab bar does not extend a minimum of 12 inches on one side and 24 inches on the other side from the centerline of the toilet.   (ii) This rear wall grab bar does not extend a minimum of 12 inches on one side and 24 inches on the other side from the centerline of the water closet or toilet, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) The position of this rear wall grab bar made it difficult for the Plaintiff to use it to transfer himself from his wheelchair to the toilet.   (iv) The action required to relocate this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

nn.   (i) In the men's restroom in Goodfella's, the side wall grab bar does not extend 54 inches from the rear wall.   (ii) This side wall grab bar does not extend a minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to its lack of extension from the rear wall, the Plaintiff had difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to install a side wall grab bar with a minimum extension of 54 inches from the rear wall is easily accomplishable and able to be carried out without much difficulty or expense.

oo.   (i) In the men's restroom in Goodfella's, the drain and supply pipes under the sink are not insulated.   (ii) As shown in the photograph below, the drain and supply pipes under the sink in the men's restroom in Goodfella's are not insulated, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) The Plaintiff used this sink, and due to the lack of insulation on the drain and supply pipes under it, he risked skin burns and injury to his legs. (iv) The action required to insulate the pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



**WOMEN'S RESTROOM IN GOODFELLA'S**

**pp.**   (i) In the women's restroom in Goodfella's, the centerline of the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of this toilet paper dispenser is not between 7 and 9 inches from the front of the water closet or toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of this toilet paper dispenser, the Plaintiff had difficulty reaching toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

**qq.**   (i) In the women's restroom in Goodfella's, the side wall grab bar does not extend 54 inches from the rear wall.   (ii) This side wall grab bar does not extend a minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to its lack of extension from the rear wall, the Plaintiff had difficulty

using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again.  (iv) The action required to install a side wall grab bar with a minimum extension of 54 inches from the rear wall is easily accomplishable and able to be carried out without much difficulty or expense.

rr.  (i) In the women's restroom in Goodfella's, the drain and supply pipes under the sink are not insulated.  (ii) These drain and supply pipes under the sink in the women's restroom in Goodfella's are not insulated, in violation of Federal Law 2010, ADAAG § 606.5.  (iii) The Plaintiff used this sink, and due to the lack of insulation on the drain and supply pipes under it, he risked skin burns and injury to his legs.  (iv) The action required to insulate the pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.

ss.  (i) In the women's restroom in Goodfella's, a door pull is not provided on both sides of the accessible toilet compartment door.  (ii) A door pull is not provided on both sides of this accessible toilet compartment door, in violation of Federal Law 2010, ADAAG § 604.8.1.2.  (iii) Due to the lack of a door pull on the outside of this door, the Plaintiff had difficulty opening this accessible toilet compartment door.  (iv) The action required to install a door pull on the outside of this compartment's door is easily accomplishable and able to be carried out without much difficulty or expense.

44.    All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

45.    The discriminatory violations described in paragraph 43 are not an exclusive list of the Defendants' ADA violations.  Plaintiff requires the inspection of the Defendants' places of

27

public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.   In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendants' places of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

46.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' building and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

47.     Defendants have discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

48.     Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

49.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is

warranted.

50.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

51.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

52.     Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

53.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter the Property, Goodfella's, Snarf's, and the parking lot, access aisles and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the

ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.      The Court issue a Declaratory Judgment that determines that the Defendants at the commencement of the subject lawsuit are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates

Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____  _____
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792; Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*